[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, plaintiffs appeal a decision of the Zoning Board of Appeals affirming the position of the Town of Westbrook's former zoning enforcement officer which prohibited them from keeping in excess of three dogs on their premises. Briefs have been filed and oral argument was heard by the court on March 18, 1996. For the reasons stated below, the appeal is dismissed.
I. FACTS
The May 17, 1995 complaint alleges that the plaintiffs, Wayne Sherman, Georgia Sherman and Lisa Sherman, are the owners of the premises located at 441 Toby Hill Road in Westbrook. The defendants initially were the Westbrook Zoning Board of Appeals and Town Clerk. Subsequently, neighbors William G. Frasure, Bonita L. Frasure, Robert Mackel and Emily Brink, were permitted to become defendants.
The complaint alleges that on March 2, 1995, Wayne Sherman received a cease and desist order from Elaine Bruckner, the Zoning Enforcement Officer (ZEO), ordering him to find an alternative placement for five of his eight dogs. On March 17, 1995, Mr. Sherman took an appeal to the Zoning Board of Appeals (ZBA) from the ZEO's decision. On April 26, 1995, a public hearing was held. Numerous witnesses spoke. A full transcript of the public hearing is part of the record.
Wayne Sherman testified that he had applied for a private kennel license, that he wanted to start up a K-9 academy, and was seeking a commercial kennel license. He added that plaintiffs had twenty-five dogs after they moved to Westbrook. Transcription of April 26, 1996 ZBA Public Hearing (hereinafter "TR") at 1, 5.
Duncan Forsyth, attorney for the zoning commission, stated that Wayne Sherman had no special permit to operate a commercial CT Page 3534 kennel, and that the dogs were personal dogs for personal use by plaintiffs, whose residence was located in a Rural Residential zone. He stated that he had consulted with the ZEO, who had examined the dog licenses of townspeople, and determined that three was the maximum number of dogs licensed by anyone in town. Mr. Forsyth indicated that he had advised the ZEO, based on his research, that she would be within her rights to issue a cease and desist order limiting the maximum number of dogs to three. TR at 3.
Attorney David M. Royston, representing various neighbors, spoke.
A letter from Dr. Robert Mackel and Emily Brink, neighbors, was read. The letter, dated April 22, 1995, and made a part of the record as item 11, stated that there was "loud barking" on a daily basis. The letter also expressed concern for the safety of their children because the dogs "include Dobermans, Rottweilers and German Shepherds, breeds that are often aggressive and are often trained as guard dogs."
Bonita Frasure, who lives directly across the street, stated that the dogs "don't just bark, they howl, and they go on and on and on." She said the noise had prevented her from doing her gardening and speaking to her neighbors. She also said that the barking, which sometimes continued for over two hours at a time, had made it impossible to sell her house. TR at 20-21
Frank Lane, a neighbor, stated that Wayne Sherman had moved into the neighborhood bringing the dogs with him, and had prevented neighbors from the quiet enjoyment of their property, diminishing property values. TR at 22.
Patty Wellette, another neighbor, stated that as a result of the dogs, "you can't walk out without these dogs going crazy." She said they barked as early as 6:00 a.m. and as late as 1:00 a.m. She said they could be found out in the street. TR at 23.
Michael Card, another neighbor, stated that he had seen "a very large Rottweiler" and other dogs in the road. He said the noise interfered with his "peaceable enjoyment" of his home. TR at 24.
By a vote of 4 to 1, the ZBA sustained the position of the ZEO. This appeal followed. CT Page 3535
II. AGGRIEVEMENT
Aggrievement is a jurisdictional question and a prerequisite to maintaining an appeal. Winchester Woods Associates v. Planningand Zoning Commission, 219 Conn. 303, 307 (1991); DiBonaventurav. Zoning Board of Appeals, 24 Conn. App. 369, 373 (1991). "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Connecticut Resources Recovery Authority v.Planning Zoning Commission, 225 Conn. 731, 739 n. 12 (1993).
On March 18, 1996, Wayne Sherman testified that he was an owner of the property in question and had received the cease and desist order issued by the ZEO. Defendants conceded aggrievement. The court finds that aggrievement has been established.
III. SCOPE OF REVIEW
As a preliminary matter, the court notes its limited scope of review in deciding the present appeal. When a zoning decision is appealed, "it is not the function of the court to retry the case. Conclusions reached by [a zoning] commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the [commission]. . . . The question is not whether the trial court would have reached the same conclusion, but whether the record before the [commission] supports the decision reached. (Citations omitted.) Calandro v. Zoning Commission, 176 Conn. 439, 440,408 A.2d 229 (1979)." (Internal, quotation marks omitted.) WestHartford Interfaith Coalition. Inc. v. Town Council, 228 Conn. 498,512-13 (1994).
IV. DISCUSSION
The broad legal issued presented by this appeal is whether the ZBA acted arbitrarily in affirming the decision of the ZEO. The narrow issue concerns whether it is the "customary and incidental use" of a landowner to own in excess of three dogs in the area in question, in light of Sections 2.40.04, 4.00.01, and 4.01.04 of the town's zoning regulations.[1]
While numerous allegations are made in the May 17 complaint, CT Page 3536 plaintiffs pursued only one claim at oral argument: that the ZBA acted arbitrarily in ratifying the methodology used by the ZEO.[2] The record, however, does not support the contention that the ZEO acted arbitrarily. Rather, it reflects that she relied on advice of counsel and investigated the question — to frame the inquiry in the parlance of the zoning regulations — of whether it was the customary and incidental use of a landowner to own in excess of three dogs in the area in question. She determined that it was not. Plaintiffs' counsel conceded at oral argument that there was no support in the record for the proposition that it was the customary and incidental use of a landowner to own in excess of three dogs. See TR at 2-3.
In proceeding as she did, the ZEO acted pursuant to General Statutes Section 8-12, and zoning regulation section 12.10.01. That regulation states as follows:
 Authority. These regulations shall be administered and enforced by the commission. The commission shall appoint a zoning enforcement officer to be its duly authorized agent. The zoning enforcement officer is hereby authorized to inspect and examine any building or structure, place, or premises and to order in writing the remedying of any condition found to exist there in violation of any provision of these regulations.
The undersigned judge sees no infirmity in the ZEO's reliance on advice of counsel in this matter. Such reliance is common. The ZEO is charged with acting pursuant to the zoning. regulations, which were promulgated "for the purpose of promoting the health safety, convenience and general welfare of the Town of Westbrook by . . . encouraging the most appropriate use of land. . . ." Section 1.00.01.
It is true that any limitation on the number of dogs is not likely to be supported by a neat, tidy mathematical or scientific formulation. But town officials like ZEOs are neither mathematicians nor scientists and they must often engage in difficult line-drawing informed by logic, common sense, investigation, and on-the-ground knowledge of a community's customs, standards, practices and folkways. It is well established that municipalities have the power to enact dog ordinances to protect public health and welfare and to prevent CT Page 3537 the disturbing of people in the enjoyment of their property. See E. McQuillin, Municipal Corporations (3rd Ed. Rev. 1989) Section 24.284. The undersigned judge finds that neither the ZEO nor the ZBA in affirming the ZEO acted arbitrarily in this case. Cf. Humev. Building Inspector of Westford, 243 N.E.2d 189 (Mass. 1969).
In this case, the ZEO had to determine whether having more than three dogs was a permitted "customary and incidental use." That term has been defined and discussed in numerous Connecticut cases, including the leading case of Lawrence v. Zoning Board ofAppeals, 158 Conn. 509 (1969), and others. See, e.g., Upjohn Co.v. Zoning Board of Appeals, 224 Conn. 96 (1992); Beit Havurah v.Zoning Board of Appeals, 177 Conn. 440 (1979); see also R. Fuller, Connecticut Practice Book Annotated, Land Use Law and Practice (1993) Sections 2.2, 4.19. As noted by Justice Thim, the author of Lawrence v. Zoning Board of Appeals, supra, 158 Conn. 509, the words of a zoning ordinance "are to be interpreted in their natural and usual meaning." Id., 511. An accessory use is one which is "dependent on or pertains to the principal or main use." Id., 512. "In examining the use in question, it is not enough to determine that it is incidental. . . . The use must be further scrutinized to determine whether it has commonly, habitually and by long practice been established as reasonably associated with the primary use." Id., 512-13. The standard is not fixed, but depends on the factors present, including the size of a lot, the nature of the primary use, the use of adjacent lots of neighbors, and the economic structure of the area. Id., 513. "As for the actual incidence of similar uses on other properties . . . the use should be more than unique or rare. . . ." Id. In Lawrence, the issue was chickens and goats. Here it is dogs. But irrespective of what precisely is at issue, "[s]uch a determination is one peculiarly within the knowledge of the local board." Id., 514.
In this case, there is no evidence in the record that it has "commonly, habitually and by long practice" been the custom of landowners in the neighborhood to own in excess of three dogs. The evidence is to the contrary. Based on the record, the ZEO had a basis to determine that having in excess of three dogs was neither customary nor incidental and was wholly out of character in the neighborhood involved given the noise, safety, and financial issues involved, see Brennick v. Planning and ZoningCommission, 41 Conn. Sup. 593 (1991), and the ZBA had a clear, reasonable basis to affirm the ZEO's decision. CT Page 3538
For the above stated reasons, the appeal is dismissed.[3]
DOUGLAS S. LAVINE JUDGE, SUPERIOR COURT