[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, A. Aiudi Sons, LLC ("Aiudi"), appeals pursuant to General Statutes § 8-8 from the denial on December 14, 1999, of an application for a zone change by the defendant, Plainville Planning and Zoning Commission ("commission.") CT Page 9063
The record shows as follows. Aiudi is the owner of residentially-zoned (R-11) property on Camp Street in Plainville known as Lot 7, Block C of Assessor's Map 12. (Return of Record ("ROR"), Item 4.) Aiudi's property abuts a residential neighborhood and an existing concrete plant operated by Aiudi. (ROR, Item 45.) On or about August 20, 1999, Aiudi submitted to the commission an application for a change of zone on a portion of its property in the R-11 zone. (ROR, Items 3, 4.) The zone change sought to reclassify the parcel as restricted industrial (RI). (ROR, Items 3, 4.)
The commission scheduled a public hearing on the application for September 14, 1999. (ROR, Items 11(B), 12(C).) The hearing began and was extended to September 28, 1999. (ROR, Items 11(B), 12(C).) At the September 28, 1999 meeting, the applicant asked that the hearing be continued because two members of the commission were not present. (ROR, Exhibit 12(D), pp. 12-13.) The commission agreed to continue the hearing until October 12, 1999. (ROR, Exhibit 12(D), p. 13.)
During the October 12, 1999 hearing, evidence and argument were submitted both favorable and unfavorable to the proposed zone change. Unfavorable evidence was presented by an attorney for nearby residents. A professional planner informed the commission that the 1997 plan of development designated this property as a neighborhood preservation area. (ROR, Item 35, p. 3.) The planner witness stated that the industrial use of the property conflicted with the neighborhood preservation of the property recommended by the plan of development. (ROR, Item 12(E), p. 45.)
The planner witness also indicated that public health and safety considerations supported a denial of the zone change. (ROR, Item 12(E), pp. 44-52.) The existing concrete operation was seen by the planner as an "island in a sea of residential development." (ROR, Item 12(E), p. 46.) He stated that the noise, pollution, and traffic associated with industrial use of the property are inconsistent with the residential neighborhood and the goals of proper zoning. (ROR, Item 12(E), pp. 46-49.) He also noted that a zoning change would not only permit the use of the property for the nearby concrete operation, it would also permit, as of right, numerous commercial and industrial uses that are incompatible with the adjoining residential uses. (ROR, Item 2(E), pp. 49-50.)
The hearing was adjourned to October 26, 1999, at which time, evidence both favorable and unfavorable to the zone change was presented. The opponents obtained the evidence of a noise expert to testify that a new source of noise would violate the regulations of the Department of Environmental Protection. (ROR, Item 12(F), pp. 29-30.) The opponents also produced an appraiser to testify that property values would be CT Page 9064 affected by the zone change. (ROR, Item 12(F), pp. 30-33.)[1]
At the meeting of December 14, 1999, the zoning change was considered by six members of the commission. Chairman Conrad Ouellette first stated: "I'd have to remind the commission that if you decide to grant Mr. Aiudi's request for a zoning map change we'd have to find a consistency with the Plan of Conservation and Development." (ROR, Item 12 (H), p. 3.) The town planner, Mary Hughes, then stated: "Correct, you need to make a specific finding." (ROR, Item 12(H), p. 3.) Thereupon, commission member
Glen Petit moved to deny the zoning map change. (ROR, Item 12(H), p. 3.)
In explaining his vote, Petit stated:
 I gave this a lot of thought, I find it a very difficult issue. Being that we have to find that it's consistent with the Plan of Development number I, I think the Plan of Development that we wrote it is not consistent with anything, even some of the points that the applicant brought up I can't see where it's necessarily consistent. And on the other hand, I don't really see this land ever being used for residential. So I think it's a very tough situation. And I think that you know if the plan, if we could find something in the Plan of Development that I could see, I would have to vote to approve it. But I just don't see where it's consistent and the Connecticut General Statutes insists that we find that it be consistent. I don't see where it is.
(ROR, Item 12(H), p. 4.)
Commissioner George Reinwald urged a vote against denial and in favor of Aiudi. "It's improperly zoned as far as I'm concerned and I don't feel if it is changed to an RI that it would be spot zoning because of the fact that you do have industrial in the area. You do have a buffer zone which would protect this particular parcel." (ROR, Item 12(H), p. 4.)
Commissioner Tim Davenport also agreed to the zone change. "If we put residential in there, they've got it even worse but yet if we go ahead with the buffer zone which is there it hides everything, you're still only going to have one entrance and I think if you look at Plan of Development there is a lot of interpretation problems there and I think my interpretation on some of the facts I see that the zone change is A OK by me." (ROR, Item 12(H), p. 5.)
Also, speaking in favor of the zone change was commissioner Rene Gauthier: "Also, as far as the Plan of Conservation I think it fits in CT Page 9065 the zone. I think the interpretation all depends on the individual but as far as I'm concerned we fit right into the Plan of Conservation where we met the industrial and the residential area. . . . I don't why we're going to leave a piece of land that it's not going to be doing anything for anybody. And I think it's foolish to waste that." (ROR, Item 12(H), p. 5.)
After discussion, the Commission in a tie, voted three-to-three to deny the change and then on a new motion voted by the same margin (a tie) to allow the change. Speaking in favor of the motion to approve the change of zone were commissioners Davenport and Reinwald. Commissioner Davenport argued that the forty foot buffer blocked Aiudi's operation from the residential properties, protected the physical and social esthetics of the neighborhood, and was, therefore, consistent with the plan of development. Since the motion to approve was tied, the motion was deemed to have failed. (ROR, Item 12(H), pp. 6-7.) This appeal followed.[2]
The sole issue on appeal has been framed as follows by Aiudi: "Whether the commission acted illegally and arbitrarily in determining it was required to find the application consistent with the Plan of Development." (Plaintiffs Brief, p. 4.)
When considering a zoning amendment, the commission acts in a legislative capacity, having broad authority and "wide and liberal" discretion. Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 543
(1991). A zoning authority "is endowed with a liberal discretion, and its [actions were] subject to review by the courts only to determine whether [they are] unreasonable, arbitrary or illegal. . . ." Francini v. ZoningBoard of Appeals, 228 Conn. 785, 791 (1994); Samperi v. Planning ZoningCommission, 40 Conn. App. 840, 845 (1996). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . ." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206 (1995). The burden of demonstrating that the zoning authority acted improperly lies with the plaintiff. Id.
The commission had no duty to state its reasons for declining to make the proposed zoning change; Calandro v. Zoning Commission,176 Conn. 439, 441 (1979), and here, where there was a tie vote, the commission naturally did not formally state any reasons. "[T]he failure of the zoning agency to give such reasons requires the court to search the entire record to find a basis for the commission's decision. . . ." (Citations omitted; internal quotation marks omitted.) ProjectHamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning CT Page 9066Zoning Commission, supra, 220 Conn. 544-45. "The court's function is to determine on the basis of the record whether substantial evidence has been presented to the board to support its findings. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . ." (Citation omitted; internal quotation marks omitted.) Jaser v. ZoningBoard of Appeals, 43 Conn. App. 545, 547-48 (1996).
Reasons given by individual members of the commission do not suffice, since they do not amount to the requisite formal, collective and official statement of the authority. West Hartford Interfaith Coalition, Inc. v.Town Council, 228 Conn. 498, 514 (1994).
Here, Aiudi focuses on the discussion at the commission meeting of December 14, 1999, concerning the plan of development to contend that the commission erred. Specifically, Aiudi argues that the commission misstated what was statutorily mandated regarding consistency between the zoning change and the plan of development.
General Statutes § 8-2 (a) requires the commission to consider the plan of development adopted pursuant to § 8-23. General Statutes § 8-3a (a) mandates that "the commission shall state on the record its findings on consistency of a proposed zoning regulation or boundaries or changes thereof with the plan of development of the municipality." It has been observed that "it is logical to assume that, when zoning changes are sought, the action of the commission would be guided by its own recommendations in the master plan, i.e., the manner in which the commission believes that the municipality should achieve coordinated development." Mott's Realty Corporation v. Town Plan ZoningCommission, 152 Conn. 535 (1965).
Nothing in the comments of the members of the commission directly departs from this standard, especially in light of the "strong presumption of regularity in the proceedings of a public body such as a municipal planning and zoning commission. . . . (Citations omitted.)Murach v. Planning Zoning Commission, 196 Conn. 192, 205 (1985). The chairman states that to grant the change, we'd have to find a consistency with the Plan of Development." (ROR, Item 12(H), p. 3.) The town planner reacts to the chairman: "Correct, you need to make a specific finding." (ROR, Item 12(H), p. 3.) Commissioner Petit states that "I just don't see where it's consistent and the Connecticut General Statutes insists that we find that it be consistent." (ROR, Item 12(H), p. 4.)
None of these comments directly indicates that the commission believed it must deny the proposed zoning change if there is an inconsistency between the proposed change and the town's plan of development. At most, CT Page 9067 the commissioners are stating that there must be a consistency to approve. Mott's Realty Corporation v. Town Plan Zoning Commission, supra, 152 Conn. 535 comes to this conclusion in declaring that it is only logical to assume that there would be consistency between the approval and plan of development.
In Six Six One Middle Turnpike Associates v. Planning and ZoningCommission, Superior Court, judicial district of Tolland at Rockville, Docket No. 061220 (May 18, 1999, Kaplan, J.), the court stated:
 No authority has been found to support the proposition that a commission when making zoning decisions may not rely on specific factual findings regarding the historical, environmental, and physical characteristics of particular areas of the town made and included in the Plan of Development after multiple years of studying reports and other documents contributed by numerous experts and professionals. Indeed, it is simply illogical that having been statutorily compelled to create a plan of development; see General Statutes § 8-23; statutorily required to consider the plan when adopting regulations; see General Statutes § 8-2; and statutorily encouraged to act consistently with the plan; see General Statutes § 8-3a; a planning and zoning commission thereafter would be precluded from relying of specific findings and recommendations contained therein as a basis for amendments to the zoning regulations and zoning map. It is equally illogical to suggest that a planning and zoning commission may not rely on a plan of development simply because it is not compelled to do so.
 In fact, consistency of a zoning commission's action with a plan of development has usually been recognized as a valid and proper reason to support the agency's action. See Calandro v. Zoning Commission, 176 Conn. 439, 441, 408 A.2d 229 (1979). . . .
 (Brackets omitted; citations omitted; footnote omitted; internal quotation marks omitted).
Even if the two commissioners' comments can be read to indicate that under no circumstances might the zoning change occur in the face of a conflict with the plan of development, it is important to remember that these were the comments of individual members of the commission.[3] As indicated above, where there are no formal reasons given for a decision of the commission, the court must search the record to determine if substantial evidence supports the commission's actions. ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 544-45; Parks v. Planning ZoningCommission, 178 Conn. 657, 661-62 (1979). CT Page 9068
As indicated above, the hearings in this case give sufficient evidence to support the decision reached by the commission. The evidence in the record before the court includes negative information on traffic safety, noise impact, pollution, and property values. Each one of these matters provided an adequate basis for the commission to deny the zone change application.
Therefore, the plaintiffs appeal is dismissed.
 ____________________ HENRY S. COHN, JUDGE